IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**LEA LUCERO,**

      **Plaintiff,**

vs.                                                      No. CIV 01-0878 JHG/KBM

**THE CITY OF LAS CRUCES
MUNICIPAL COURT, an agency
of the City of Las Cruces, a
municipal corporation and political
subdivision of the State of New Mexico,
MELISSA MILLER-BYRNES, Presiding
JUDGE, in her individual and official
capacities and KENT YALKUT, individually,**

      **Defendants.**

<u>**MEMORANDUM OPINION**</u>

      This matter is before the Court on the following motions: (1) Defendants' Motion for Partial Summary Judgment on Count I of Plaintiff's Complaint, filed August 29, 2002; (2) Plaintiff's Countermotion for Partial Summary Judgment, filed September 13, 2002; and (3) Defendants' Motion to Strike the Second Statement of the Affidavit of Lea Lucero, filed October 11, 2002.  Having considered the motions, the memoranda in support and in opposition, and the relevant law and being otherwise fully informed, the Court finds that (1) Defendants' Motion for Partial Summary Judgment on Count I of Plaintiff's Complaint will be granted in part and denied in part; (2) Plaintiff's Countermotion for Partial Summary Judgment is well taken and will be

granted; and (3) Defendants' Motion to Strike the Second Statement of the Affidavit of Lea Lucero will be granted in part and denied in part.

## I.  Factual Background

The Municipal Court of the City of Las Cruces employed Plaintiff from December 2, 1991 to April 21, 2000.  Defendant Byrnes, Plaintiff's immediate supervisor and the Presiding Judge for the Municipal Court, terminated Plaintiff on April 21, 2000.  At that time, Plaintiff was the Court Administrator.  Prior to terminating Plaintiff, Defendant Byrnes claims that on December 21, 1999, she apprised Plaintiff of her unsatisfactory work performance in a four page memorandum. Pl's. Ex. A.  Defendant Byrnes also claims she advised Plaintiff she had to improve her work performance, requested a list of Plaintiff's job duties, and informed her that neglect of her duties in the future would result in disciplinary action.  On this day, Defendant Byrnes also confronted Plaintiff about a complaint from Defendant Yalkut, alleging Plaintiff was insubordinate.

On January 4, 2000, Defendant Byrnes met with Plaintiff and provided her with a written reprimand for insubordination and neglect of assigned duties.  At that time, Defendant Byrnes held a counseling session with Plaintiff and advised her of a proposed five day suspension and informed Plaintiff she was on "warning from here on out."  Defendant Byrnes told Plaintiff the hearing addressing the proposed five day suspension would be held later that afternoon. According to Defendant Byrnes, she told Plaintiff the purpose of the hearing was an opportunity for her to rebut anything with which she had been charged and an opportunity for her to provide any proof or evidence in support of her position.  Prior to serving Plaintiff with the "notice of discipline" regarding the allegations made by Defendant Yalkut, Defendant Byrnes claims she "independently investigated them to determine their veracity."

At the January 4, 2000 hearing, Plaintiff denied Defendant Byrnes' allegations and denied being insubordinate. Defendant Byrnes claims "After considering the evidence, [I] determined that Plaintiff should be suspended for an additional five days for Plaintiff's continued insubordinate behavior and neglect of assigned duties. This decision was [mine] alone, and I did not ask for any input regarding discipline from Judge Yalkut." Byrnes Aff. at ¶ 14. Plaintiff filed a request for a grievance hearing before the Personnel Appeals Board, which the Board declined to hear.

On January 19, 2000, Plaintiff began an extended leave due to complications in her pregnancy. Plaintiff did not return to work until April 19, 2000. On that day, Defendant Byrnes provided Plaintiff with a Notice of Intent to Terminate, enumerating six reasons for Plaintiff's termination and advising her that a hearing would be held at 10:00 a.m. on April 21, 2000. During the April 21, 2000 hearing, Defendant Byrnes gave Plaintiff the opportunity to ask questions and respond to Defendant Byrnes' questions. That afternoon, Defendant Byrnes, after considering all of the evidence, decided to uphold her proposed decision to terminate Plaintiff's employment. Defendant Byrnes presented Plaintiff with an Inter-Departmental Memorandum stating, "After reviewing the information discussed in your Laudermill (sic) Hearing, I have determined to uphold my decision to terminate your continued employment with the Las Cruces Municipal Court." Defendant Byrnes claims the decision to terminate Plaintiff was hers and she did not ask for any input regarding this matter from anyone. Plaintiff filed a grievance with the Personnel Appeals Board, but it was denied as untimely. According to Mr. David Aguayo, the Recording Secretary for the Personnel Appeals Board for the City of Las Cruces, he does not

3

know why the Personnel Appeals Board did not hear Plaintiff's request for a grievance hearing following her January 2000 suspension. Aguayo Aff. at ¶8.

## II.  Standard of Review

This Court will grant summary judgment when there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The movant carries the burden of establishing there are no genuine issues of material fact, *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970), but may discharge its burden by showing there is an absence of evidence to support the non-movant's case, *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant meets its burden, the burden shifts to the non-movant to demonstrate a genuine issue for trial on a material matter. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). In making its summary judgment determination, the court looks at the pleadings and documentary evidence in the light most favorable to the non-movant, *Deepwater Invs., v. Jackson Hole Ski Corp.* 938 F.2d 1105, 1110 (10th Cir. 1991), and the movant must show beyond a reasonable doubt it is entitled to summary judgment, *Hicks v. City of Watonga, Okla.*, 942 F.2d 737, 743 (10th Cir. 1991). However, once the burden shifts to the non-movant, that party may not rest on its pleadings but must set forth specific facts showing there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof. *Celotex Corp.*, 477 U.S. at 324. However, "the mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48(1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* If the non-movant cannot make such a showing, after adequate time for

discovery, summary judgment is mandated. *Id.* at 322. The Court will consider the parties' cross-motions for partial summary judgment in light of these standards.

### III.  Discussion

As a preliminary matter, the Court will address Defendants' Motion to Strike Plaintiff's Countermotion for Partial Summary Judgment. Defendants contend the Court should strike Plaintiff's cross-motion for partial summary judgment as to Count I of Plaintiff's Complaint because it was filed untimely. According to the Court's Scheduling Order, all dispositive motions were to be filed by September 1, 2002. Plaintiff filed her motion for partial summary judgment on September 13, 2002. Pursuant to the Court's discretion, Defendants' motion to strike Plaintiff's cross-motion for partial summary judgment as to Count I of Plaintiff's Complaint is denied. However, Defendants' Motion to Strike the Second Statement of the Affidavit of Lea Lucero is well taken and will be granted. Rule 56(e) of the Federal Rules of Civil Procedure requires that "Supporting and opposing affidavits . . . shall set forth such facts as would be admissible in evidence." Fed.R.Civ.P. 56(e). Plaintiff's second statement would be inadmissable as hearsay. *See* Lucero Aff. ¶ 2.

**A.  Due Process Claim**

The Due Process Clause of the Fourteenth Amendment "provides that certain substantive rights– life, liberty, and property cannot be deprived except pursuant to constitutionally adequate procedures." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985). "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Board of Regents v. Roth*, 408 U.S. 564, 569 (1972). Thus, in order to invoke the protections of procedural due process, a plaintiff

5

must first establish the existence of a recognized property or liberty interest.[1]  "In order to have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it." *Id.* at 577.  A person must have a legitimate claim of entitlement to it. *Id.*  Moreover, property interests are not created by the Constitution; they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law. *Id*. Once a person establishes a protected interest, "he must be afforded opportunity for some kind of hearing." *Id.* at 570 n.7; *see also Loudermill*, 470 U.S. at 542 (holding that it is an "essential principle of due process that a deprivation of property be preceded by notice and opportunity for hearing appropriate to the nature of the case")(citation, alterations, and internal quotation marks omitted).  The importance of the protected interests involved determine "the formality and procedural requisites for the hearing." *Roth,* 408 U.S. at 571 n.8.

In this case, there is no dispute Plaintiff had a property interest in her continued employment.  However, Defendants claim Plaintiff "was afforded all the process that she was due in the form of *Loudermill* pre-deprivation hearings."  Defs.' Mot. for Partial Summ J. at 1. Defendants also contend Plaintiff waived her procedural due process rights because she failed to file her grievance pursuant to the Personnel Policy which provides that grievances "shall be filed within seven days of the grievable event." Defs.' Mem. Brief in Supp. of Mot. for Partial Summ. J. at 1. Defendants claim Plaintiff waited over five months after her termination to request a grievance hearing before the Personnel Appeals Board and thus waived her procedural due process rights.

---

[1] Plaintiff concurs with the granting of Defendants' Motion for Partial Summary Judgment as to her liberty interest claim. Pl's. Resp. to Mot. for Partial Summ. J. at 1.

**1.  January 4, 2000 Ten Day Suspension**

A pretermination hearing need not be elaborate.  *Lourdermill*, 470 U.S. at 546.  At a minimum, it must provide the employee notice and an opportunity to respond.  *Id.*  In this case, Defendants provided Plaintiff with all that is required for a pretermination hearing.  However, the holding in *Loudermill* rested in part on the provisions for a full post-termination hearing.  *Id.*  In *Loudermill*, plaintiffs were later entitled to a full administrative hearing and judicial review under state law.  *Id.*  Defendants assert that pursuant to Municipal Court policy an employee may seek review of a *Lourdermill* hearing by requesting a grievance hearing before the City's Personnel Appeal Board.  However, when Plaintiff sought review of her ten day suspension, the Personnel Appeal Board denied her a hearing.  Although Defendants claim they do not know the reason why the Personnel Appeals Board did not hear Plaintiff's request for a grievance hearing following her January 2000 ten day suspension, Plaintiff submitted a September 25, 2000 letter from the City of Las Cruces stating:

> The City of Las Cruces has reconsidered your request, and will forward your request to the Personnel Appeals Board with a recommendation that the Board agree to hear your grievance regarding your termination.  Under the policies that were in effect at the time of your ten-day suspension, the Personnel Appeals Board determine that because you were grieving an action by the Presiding Judge, under the doctrine of separation of powers, and *Mowrer v. Rusk*, 95 N.M. 48, 618 P.2d 886 (1980), the Personnel Appeals Board determined that it could not hear your grievance.
>
> As you know, the Personnel Appeals Board is a neutral entity that is not under the supervision or control of the City of Las Cruces or the City of Las Cruces Municipal Court.  Accordingly, the decision to hear your grievance concerning your termination will be made by the Personnel Appeals Board.

Pl.'s Ex. F.  According to Plaintiff, Mr. Aguayo wrote this letter in response to her request to be allowed to file a late grievance after her April 2000 termination.

The policies that were in effect at the time of Plaintiff's ten day suspension provided as follows:

> **Grievance for Suspension**:  Within ten business days of the Notice of Suspension, the employee will be provided a hearing date for the City of Las Cruces Personnel Appeals Board to Review the basis and terms of the suspension.  At the Personnel Appeals Board hearing, the employer may introduce evidence including, but not limited to, documentation of disciplinary procedures contained in the Supervisory Notes, the employee's Municipal Court Personnel File and the City of Las Cruces permanent personnel file.  The employee shall have the opportunity to meaningfully respond to the employer's statement of facts and present his or her version of the facts.  The decision of the City of Las Cruces Personnel Appeals Board will be delivered to the Presiding Judge who shall take appropriate action.

Aguayo Aff. Defs.' Ex. B, September 18, 2000 Lucero Grievance, Attachment 3.  Under this policy, within ten business days of the Notice of Suspension, "the employee will be provided a hearing date for the City of Las Cruces Personnel Appeals Board to review the basis and terms of the suspension" without the employee having to request one.  *Id.*  In this case, even though Plaintiff requested a grievance hearing for the Personnel Appeals Board to review her ten day suspension, the Personnel Appeals Board declined to hear her grievance on the grounds that it had determined it could not hear her grievance under the doctrine of separation of powers, and *Mowrer v. Rusk*, 95 N.M. 48, 618 P.2d 886 (1980).

Whether a pretermination hearing is adequate depends heavily upon the fact that post-termination proceedings may cure superficial pretermination hearings.  In this case, Plaintiff was suspended without pay for ten days without having the opportunity to defend herself before an impartial tribunal.  Therefore, although Plaintiff followed Defendants' grievance procedure she was denied a hearing before the Personnel Appeal Board as required by Defendants' grievance procedure in violation of her procedural due process rights.

8

**2.  April 21, 2000 Termination**

On April 14, 2000, Defendant Byrnes issued a memorandum to all Municipal Court employees.  The memorandum informed the employees that Defendant Byrnes was repealing the former presiding judge's revisions to the Manual of Personnel Policies.  Defendant Byrnes attached her own "new disciplinary procedures" to the memorandum.  Aguayo Aff. Defs.' Ex. B, September 18, 2000 Lucero Grievance, Attachment 1.  Specifically, Defendant Byrnes attached Section 900, Disciplinary Actions/Transfers & Terminations, and Section 1000, Performance Reviews, and Section 1100, Employee Grievances and Discrimination Complaints.  Defendant Byrnes' "new disciplinary procedures" were "adopted and appl[ied] to the Municipal Court as of April 14, 2000"and  provided in relevant part as follows:

> **SECTION 1100 EMPLOYEE GRIEVANCE**
>
> 1101.  **POLICY**.  It is the policy of the City to treat all employees equitably in matters affecting their employment.  Every eligible employee shall have an opportunity to resolve matters which affect his/her employment.  Every eligible employee with a grievance shall have the privilege of presenting the grievance in accordance with the following procedure without fear of reprisal.
>
> 1102.  **EMPLOYEE GRIEVANCE**.
>
>> 2.  The wording <u>eligible employee</u> means any regular full-time and regular part-time employee.  <u>For purposes of this policy, it also includes Court Administrator and CSC.</u>  Discharge of an employee shall not preclude access to the grievance procedure.
>>
>> 3.  Before an employee files a formal grievance, the employee must advise his/her immediate supervisor orally or in writing of the substance of the compliant (sic).
>>
>> 4.  Within seven business days following the event upon which the grievance is based, an eligible employee who has been unable to resolve their problem with their immediate

        supervisor may file a formal written grievance with the <u>Presiding Judge</u>. The grievance must be filed on forms provided by the <u>Court Administrator</u>.

5. Within five business days after receipt of the formal grievance and after reviewing all facts pertaining to the grievance, the <u>Presiding Judge</u> or designee shall provide written response to the employee who filed the grievance.

6. Within five business days from receipt of the <u>Court Administrator=s</u> (sic) response, the employee who has filed a grievance may appeal in writing to the <u>Presiding Judge</u> if the grievance has not been resolved to his/her satisfaction. The <u>Presiding Judge</u> or designee shall render a written decision seven business days from receipt of the employee=s (sic) appeal.

7. If the <u>Court Administrator</u> or <u>Presiding Judge</u> does not respond to the employee grievance within the established time frame, the grievance will automatically be appealed to the next level in the grievance processes (sic).

8. If the decision of the <u>Presiding Judge</u> is not satisfactory to the employee who has filed a grievance, the employee may (within five working days of receipt of this decision) appeal that decision in writing to the Personnel Appeals Board. The normal grievance procedure shall be followed except:

    A. Employees who report directly to the Presiding Judge shall appeal directly to the Personnel Appeals Board.

9. The employee=s (sic) written appeal to the Personnel Appeals Board shall be filed with the City Clerk or designee.

10. Within twelve (12) business days from the filing of the employee=s (sic) appeal, the City Clerk or his/her designee, with the concurrence of the Chairperson of the Personnel Appeals Board, shall schedule a hearing on the grievance before the Personnel Appeals Board. Written notice of the time and place of the hearing shall be prepared by the City Clerk or his/her designee, and distributed to the Grievant, Chairperson of the Personnel Appeals Board and Board

>members, the immediate supervisor of the Grievant, <u>the
Court Administrator</u> and the <u>Presiding Judge</u>.

Byrnes Aff. Defs.' Ex. A.  Defendants contend Plaintiff waived her right to a hearing before the Personnel Appeals Board because she did not file within seven days of the aggrieved event and cite to Section 1102 (21) of the Employee Grievance Policy which states:

> 21.  Any grievance not filed pursuant to the provisions of this procedure within seven business days of the event, or circumstance upon which such grievance is based, shall be deemed to have been waived and no relief shall be granted thereon.

This section refers to Section 1102(4).  It is not clear whether this section applies to Plaintiff.  However, under the grievance procedure, because Plaintiff had been "unable to resolve her problem with her immediate supervisor," she could "file a formal written grievance with the Presiding Judge."  *See* Section 1102(4).  However, Section 1102(8) directs "employees who report directly to the Presiding Judge" to "appeal directly to the Personnel Appeals Board."  *See* Section 1102(8)(A).  Section 1102 (9) directs employees to file their written appeal to the Personnel Appeals Board with the City Clerk or designee.

Plaintiff contends the grievance process is anything but clear because under Section 1102 (8) employees who report directly to the Presiding Judge do not follow the normal grievance procedure.  Plaintiff contends she construed this language to mean that the time limits set forth in the grievance procedures did not apply.  Nevertheless, Plaintiff relied on the time limits set forth in the repealed grievance policy and completed a grievance form.  Plaintiff attempted to file her grievance form with the City of Las Cruces within ten days of her suspension.  However, Plaintiff claims Don Brooks, Director of Human Resources for the City of Las Cruces, told her the City

11

was in the process of revising the grievance policies and therefore she did not need to file an internal grievance.

In order to find waiver, the Court must find that Plaintiff voluntarily and knowingly waived her constitutional right to due process.  *See D. H. Overmyer Co. v. Frick Co.,* 405 U.S. 174, 185-86 (1972)("we do not presume acquiescence in the loss of fundamental rights"); *Mood for A Day, Inc. v. Salt Lake County*, 953 F.Supp. 1252, 1268 (D.Utah 1995).  Based on the record, the Court finds that Plaintiff did not waive her constitutional right to due process.

Plaintiff also contends that the Personnel Appeals Board had already declined to hear her grievance after her ten day suspension.  Defendants submitted a letter from the Personnel Appeals Board dated October 20, 2000.  According to this letter, the Personnel Appeals Board held a closed meeting on October 10, 2000, and considered the City of Las Cruces' recommendation that the Personnel Appeals Board hear Plaintiff's grievance regarding her termination.  The Personnel Appeals Board issued its Decision on October 20, 2000, and declared: "Earlier in the year, the Board determined that it would not hear the grievance(s) submitted by Ms. Lucero.  After reviewing the information submitted in her letter, the Board reaffirms its position, and therefore, our decision not to hear the matter stands."  Aguayo Aff. Defs.' Ex. B, September 18, 2000 Lucero Grievance, Attachment 4.  This Decision makes clear that, prior to Plaintiff's termination, the Personnel Appeals Board had already decided it would not hear any of her grievances.  Therefore, even if Plaintiff had followed Defendant Byrnes' grievance procedures, she would have been denied a post-termination hearing.  As already noted, pretermination hearings need not be extensive as long as there are adequate post-termination hearings available.

In this case, Plaintiff was not afforded a post-termination hearing in violation of her constitutional right to due process.

Finally, In *McClure v. Independent School District No. 16*, 228 F.3d 1205 (10th Cir. 2000), the Tenth Circuit, in discussing the requirements applied to post-termination hearings, stated:

> This court has indicated in dicta that a full post-termination hearing is understood to include the right to representation by an attorney and the right to cross-examine adverse witnesses. We have stated elsewhere that while not necessary in every case, procedural due process often requires confrontation and cross-examination of those whose word deprives a person of his livelihood.

*Id.* at 1211 (internal citations and quotations omitted). Under Defendant Byrnes' grievance policy, an employee "who has filed a grievance may be represented before the Personnel Appeals Board by a representative of his/her choice, or may represent himself/herself. *See* Section 1102(12). It is "the responsibility of the City Clerk or his/her designee to schedule or reschedule a hearing, except (sic) the witness list and names of representatives, and provide any other information or documentation requested by the Chairperson of the Personnel Appeals Board." *See* Section 1102(13). Additionally, the Personnel Appeals Board has the "authority to call for the attendance of a reasonable number of pertinent witnesses and the production of documents, to swear witnesses, to examine witnesses, including the employee and his/her supervisor, and to hear all evidence properly brought before it." *See* Section 1102(15). However, the Personnel Appeals Board does not have the authority to grant back pay to any employee for any period to the date of the event upon which the grievance is based. *See* Section 1102 (18). The Personnel Appeals Board must issue its decision or recommendation within twelve business days from the date of the

end of the hearing and is based upon the evidence received at the hearing. *See* Section 1102 (20). Moreover, Section 1102 (20)(A) provides as follows:

> The Personnel Appeals Board shall render its decision/recommendation to the Presiding Judge with a copy to the Court Administrator, and the employee who has filed a grievance. The Presiding Judge must either approve or reject the recommendation of the Personnel Appeals Board which deals with the hiring or firing of employees. Grievances rejected by the Presiding Judge shall have no further recourse to redress within the organization. Decisions rendered by the Personnel Appeals Board on grievances other than hiring or firing shall be final and binding on all parties.

Under this section, even if the Personnel Appeals Board would have granted Plaintiff an appeal, Defendant Byrnes would still be the ultimate decisionmaker because she had the power to "approve or reject" the Personnel Appeals Board's decision. Plaintiff contends this would have deprived her of procedural due process because she is entitled to an impartial decisionmaker.

"A fundamental principle of procedural due process is a hearing before an impartial tribunal." *Tonkovich v. Kansas Board of Regents*, 159 F.3d 504, 518 (10th Cir. 1998). "However, 'a substantial showing of personal bias is required to disqualify a hearing officer or tribunal in order to obtain a ruling that a hearing is unfair.'" *Id.* (quoting *Corstvet v. Boger*, 757 F.2d 223, 229 (10th Cir. 1985)). Moreover, "[b]ecause honesty and integrity are presumed on the part of a tribunal, there must be some substantial countervailing reason to conclude that a decisionmaker is actually biased with respect to factual issues being adjudicated." *Id.* (quoting *Mangels v. Pena*, 789 F.2d 836, 833 (10th Cir. 1986)).

The Tenth Circuit also has noted that "the presence of even one biased member on a tribunal is sufficient to deprive a plaintiff of procedural due process." *McClure v. Independent School Dist. No. 16*, 228 F.3d 1205, 1216 n. 8 (10th Cir. 2002). Furthermore, "'[l]itigants are

14

entitled to an impartial tribunal whether it consists of one man or twenty and there is no way which we know of whereby the influence of one upon the others can be quantitatively measured.'" *Id.* (quoting *Hicks v. City of Watonga*, 942 F.2d 737, 748 (10th Cir. 1991)).

In this case, Defendant Byrnes makes clear she made the determination to terminate Plaintiff. Byrnes Aff. ¶¶ 20, 24 ("I, and I alone, made this determination. This decision to terminate Plaintiff was my decision alone, and I did not ask for any input regarding this from anyone."). Defendant Byrnes also attested to having "independently verified all allegations and problems, and determined that such allegations were true." Byrnes Aff. ¶ 11. Finally, Defendant Byrnes admits "I determined that it would be in the best interests of Municipal Court that Plaintiff be terminated. I, and I alone, made this determination." Bynes Aff. ¶ 20. Under Defendant Byrnes' grievance policy, had the Personnel Appeals Board granted Plaintiff a hearing, Plaintiff's fate nevertheless would have been decided by Defendant Byrnes since as the presiding judge she "must either approve or reject the recommendation of the Personnel Appeals Board which deals with the hiring or firing of employees." Once the presiding judge rejects a grievance, the terminated employee has "no further recourse to redress within the organization." Having reviewed the affidavits, the transcripts of the January 4, 2000 Counseling Session and Loudermill hearing and the transcript of the April 21, 2000 Loudermill hearing, the Court finds that had Plaintiff been afforded a hearing before the Personnel Appeals Board, it would have been nothing more than an exercise in futility. As the final decisionmaker, Defendant Byrnes would not be an impartial decisionmaker in this case. In essence, under the grievance policy, Plaintiff is treated as an at-will employee who works at the pleasure of the presiding judge. The Court finds that the grievance procedures in effect at the time of Plaintiff's termination were constitutionally

15

inadequate. Accordingly, Defendants' Motion for Partial Summary Judgment on Count I of Plaintiff's Complaint is granted as to Plaintiff's liberty claim and denied as to Plaintiff's due process claim. Plaintiff's Countermotion for Partial Summary Judgment is granted as to her due process claim.

## B.  Equal Protection Claim

Defendants also contend Plaintiff's equal protection claim should be dismissed because she has not shown she was similarly situated to any terminated Municipal Court employee. Plaintiff argues she was treated differently than Manuel Flores, another Municipal Court employee Defendant Byrnes terminated, yet he was afforded a hearing before the Personnel Appeals Board. Defendants claim Plaintiff was not "similarly situated"to Manuel Flores because he filed a timely request for a hearing before the Personnel Appeals Board and she did not. Defendants contend the only similarity between Mr. Flores and Plaintiff is that both were fired by Defendant Byrnes. Defendants have filed an affidavit from Mr. Aguayo attesting to the fact that the Personnel Appeals Board only hears timely filed grievances. In Plaintiff's case, the Personnel Appeals Board denied her a hearing because she was grieving an action by the presiding judge. However, in Mr. Flores' case, the Personnel Appeals Board heard his appeal even though he was grieving an action by the presiding judge.

"'[A] violation of equal protection occurs when the government treats someone differently than another who is similarly situated.'" *Crider v. Bd. of Coounty Comm'rs.*, 246 F.3d 1285, 1288 (10th Cir. 2001)(quoting *Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence*, 927 F.2d 1111, 1118 (10th Cir. 1998). Plaintiff has demonstrated she was treated differently than Mr. Flores, another terminated Municipal Court employee also grieving an action by the presiding

16

judge.  Thus, Defendants' motion for summary judgment as to this claim is denied.  Plaintiff's cross-motion for summary judgment as to this claim is granted.

**C.  Qualified Immunity**

Defendants Byrnes and Yalkut have raised the affirmative defense of qualified immunity which protects governmental officials from damages in civil rights actions.  Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Gross v. Pirtle,* 245 F.3d 1151, 1155 (10th Cir. 2001).  Moreover, the protection of qualified immunity gives officials "a right not merely to avoid 'standing trial,' but also to avoid the burdens of 'such pretrial matters as discovery.'" *Behrens v. Pelletier*, 516 U.S. 299, 308 (1996)(quoting *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985)).

Once a defendant raises the defense of qualified immunity, the plaintiff initially bears a heavy two-part burden. *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir.1995).  The plaintiff must first demonstrate that the defendant's actions violated a constitutional or statutory right and then must show that the constitutional or statutory rights the defendant violated were clearly established at the time of the conduct at issue.  *Id.*  In determining whether the right was clearly established,  "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  The action alleged to have violated a right does not have to have previously been held unlawful, however, "in light of pre-existing law the unlawfulness must be apparent."  *Id.* "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Medina v. City and County of Denver*, 960

F.2d 1493, 1498 (10th Cir. 1992). Thus, to avoid summary judgment on qualified immunity grounds, a plaintiff must "'present facts which if true would constitute a violation of clearly established law.'" *Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 646 (10th Cir. 1988)(quoting *Dominque v. Telb*, 831 F.2d 673, 677 (6th Cir. 1987)).

If the plaintiff fails to carry either part of his two-part burden, the Court must grant the defendant qualified immunity. *Albright*, 51 F.3d at 1535. "Only if the plaintiff succeeds in carrying his two-part burden, does the burden shift to the defendant. At that point, the defendant must show 'that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law.'" *Id.* (quoting *Hinton v. City of Elwood*, 997 F.2d 774, 779 (10th Cir. 1993)).

At the time of Plaintiff's ten day suspension and termination, the law underlying Plaintiff's § 1983 due process and equal protection claims was clearly established. Accordingly, Defendants are not entitled to qualified immunity.

Notwithstanding, under 42 U.S.C. § 1983, a defendant may not be held liable unless he or she subjected a citizen to the deprivation, or caused a citizen to be subjected to the deprivation. *Tonkovich,* 159 F.3d at 518. The record reflects Defendant Yalkut was present at the January 4, 2000 *Loudermill* hearing. However, the January 4, 2000 Lourdermill hearing transcript does not reflect Defendant Yalkut audibly participated at that hearing. Additionally, Defendant Byrnes attested to the fact that Defendant Yalkut had no input in her decision to suspend or terminate Plaintiff. Defendant Yalkut also had no authority to suspend or terminate her. Accordingly, the Court will grant Defendant Yalkut summary judgment as to Plaintiff's due process and equal protection claims.

In conclusion, Defendants' Motion for Partial Summary Judgment as to Plaintiff's liberty claim is granted and denied as to Plaintiff's due process and equal protection claims.  Defendant Yalkut is granted summary judgment as to Plaintiff's liberty, due process and equal protection claims.  Plaintiff's Countermotion for Partial Summary Judgment is granted as to her due process and equal protection claims and denied as to her liberty interest claim.  Finally, Defendants' Motion to Strike Plaintiff's Countermotion for Partial Summary Judgment as untimely is denied and granted as to Defendants' Motion to Strike the Second Statement of the Affidavit of Lea Lucero is granted.

A partial judgment shall be entered in accordance with this Memorandum Opinion.

**JOE H. GALVAN**
**UNITED STATES MAGISTRATE JUDGE**