IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LEA LUCERO,

      Plaintiff,

vs.                                          No. CIV 01-0878 JHG/KBM

THE CITY OF LAS CRUCES
MUNICIPAL COURT, an agency
of the City of Las Cruces, a
municipal corporation and political
subdivision of the State of New Mexico,
MELISSA MILLER-BYRNES, Presiding
JUDGE, in her individual and official
capacities and KENT YALKUT, individually,

      Defendants.

## MEMORANDUM OPINION AND ORDER

      This matter is before the Court on Defendants' Motion for Partial Summary Judgment on Counts II, III, and IV of Plaintiff's Complaint **[Doc. 36]**, filed August 30, 2002. Plaintiff alleges a civil conspiracy claim pursuant to 42 U.S.C. § 1985(2) in Count II, a state claim for retaliatory discharge in Count III; and a state claim for Intentional Infliction of Emotional Distress in Count IV. Having considered the motion, the memoranda in support and in opposition, and the relevant law and being otherwise fully informed, the Court finds that Defendants' Motion for Partial Summary Judgment will be granted in part and denied in part.

## **I. Factual Background**

In its November 18, 2002 Memorandum Opinion, the Court set out the factual background of this case and will reiterate only those facts pertinent to this motion. Plaintiff was the Court Administrator for the Municipal Court of the City of Las Cruces at the time Defendant Byrnes, the presiding judge, terminated her employment. Defendant Yalkut was the other municipal judge at the time of Plaintiff's termination. Plaintiff contends Defendant Yalkut had been embroiled in a dispute with Judge Triviz, the former presiding judge. Plaintiff contends she submitted three affidavits in a Writ of Superintending Control between Judge Triviz and Defendant Yalkut. Her affidavits were supportive of Judge Triviz and unfavorable to Defendant Yalkut. Plaintiff contends Defendant Yalkut could not retaliate against her because the State District Court issued a Writ of Superintending Control directing compliance with applicable personnel rules and regulations. However, Plaintiff asserts that Defendant Yalkut then conspired with Defendant Byrnes to terminate her employment.

In support of this contention, Plaintiff maintains that on November 22, 1999, shortly after Defendant Byrnes was elected, Defendant Byrnes told her that she would be making changes and that she "may want to move on." Then on December 21, 1999, Defendant Byrnes presented Plaintiff with a memorandum, expressing her dissatisfaction with Plaintiff's job performance. Defendant Byrnes claims she presented Plaintiff with this memorandum after observing Plaintiff's work performance for more than a month. Byrnes Aff. ¶ 3. Defendant Byrnes claims she also discussed a complaint by Defendant Yalkut regarding Plaintiff countermanding one of his requests for a clearance involving driving violations of a defendant. Byrnes Aff. ¶ 6. After this discussion, Defendant Byrnes claims she advised Plaintiff to be at work the following day because

2

she was needed at a disciplinary hearing for another Municipal Court employee.  Byrnes Aff. ¶ 7. Plaintiff, who was pregnant at the time, left a message on Defendant Byrnes' voice mail that evening, informing Defendant Byrnes that she was ill and would not be able to make it to work the following day.  Byrnes Aff. ¶ 9.  Plaintiff did not return to work until January 4, 2000.

In the December 21, 1999 memorandum, Defendant Byrnes listed five areas which Defendant Byrnes claimed reflected Plaintiff's unsatisfactory job performance.  Specifically, in item three of the memorandum, Defendant Byrnes alleged that Defendant Yalkut had informed her that Plaintiff had ordered Westlaw be removed from his computer because the Municipal Court no longer had an account with Westlaw.  Defendant Byrnes claimed it was her impression that Plaintiff did not want Defendant Yalkut to have access to Westlaw.  Defendant Byrnes then advised Plaintiff that she would not tolerate further acts of insubordination and reminded Plaintiff that she had already verbally warned her about treating Defendant Yalkut with respect.

In response to this memorandum, Plaintiff countered Defendant Byrnes' assessment of her job performance.  As a preliminary matter, Plaintiff pointed out that she had been employed with the City of Las Cruces Municipal Court for almost ten years and had worked with six judges before Defendant Byrnes, yet she had never received "so much as a verbal warning."  Plaintiff stressed that she had received letters of recommendation and appreciation from some of the judges.  Plaintiff also countered Defendant Byrnes' statement that she had observed her job performance for a month.  Plaintiff claimed Defendant Byrnes had less than thirty working days to observe her performance, five of which Defendant Byrnes had not even assumed her position and ten of which Plaintiff was away at training.

Next, Plaintiff addressed the five areas of deficiency listed by Defendant Byrnes. Specifically, Plaintiff denied ordering Westlaw be removed from Defendant Yalkut's computer and asked Defendant Byrnes to verify this with the department responsible for maintaining the computers. Plaintiff explained she was not aware Defendant Yalkut had ever installed the software for Westlaw in his computer. According to Plaintiff, when she begin receiving the software for Westlaw, she discussed installing the software with the former presiding judge, and he informed her there was no need for it. Plaintiff also disputed being disrespectful to any judge, especially Defendant Yalkut. Plaintiff claimed she could count the number of encounters she had with Defendant Yalkut and had documentation for every encounter with him.

On January 4, 2000, Defendant Byrnes held a counseling session with Plaintiff and provided her with a written reprimand for insubordination and neglect of assigned duties. At the counseling session, Defendant Byrnes accused Plaintiff of making no effort to contact her personally on December 21, 1999 to inform her she would not be at work on December 22 due to illness. Plaintiff responded that Defendant Byrnes had previously directed her to call her voice mail because Plaintiff would never have a reason to call Defendant Byrnes either at home or on her cellular telephone.

On the same day, Defendant Byrnes held a *Loudermill* hearing to address the matters listed in the written reprimand. Defendant Yalkut was present at the hearing. Defendant Byrnes presented Plaintiff with a second incident report and suspended Plaintiff for an additional five days. Defendant Byrnes explained the additional five day suspension was for failing to provide Defendant Byrnes with the documentation she requested in the December 21, 1999 memorandum. Plaintiff explained she had prepared a response which she had on disk, but she was unable to print

4

it that morning because Defendant Byrnes "had disconnected her computer and disabled all [her] access to the computer." Lucero Dep. pg. 47, lines 1-4.  Plaintiff went to Defendant Byrnes office to ask her if she was aware that her computer had been disabled, and Defendant replied she was aware of it.  *Id.*, pg. 158, lines 20-24.  At that point, Plaintiff asked Defendant Byrnes what her intentions were and Defendant Byrnes cut her off and told her she would call her up later.  *Id.,* pg. 158-59, lines 24 & 1-2.  Plaintiff contends she later tried to tell Defendant Byrnes she had the response, but Defendant Byrnes told her to shut her mouth.  *Id.*, pg. 47, lines 8-11.

Defendant Byrnes then addressed the complaint brought by Defendant Yalkut against Plaintiff.  Defendant Yalkut had complained that on December 17, 2000, he had mandated a "clearance" be issued.  On December 20, 2000, Plaintiff was contacted regarding this clearance.  However, Defendant Byrnes alleged Plaintiff's actions or inactions countermanded the clearance. *See* January 4, 2000 Transcript.

Plaintiff responded to this allegation by reminding Defendant Byrnes that she had already addressed this matter sometime in December.  According to Plaintiff, Defendant Byrnes summoned Plaintiff and several employees to her office and investigated the issue.  Plaintiff again denied countermanding Defendant Yalkut's order.  Defendant Byrnes asked for documentation and witnesses to support Plaintiff's position.  Having only received notice of the written reprimand that morning, Plaintiff could not produce any documentation or witnesses.  However, Plaintiff named an employee that would support her position, but Defendant Byrnes indicated she had already interviewed her.  Plaintiff attempted to explain that she had already told Defendant Byrnes what had happened that day but went over the facts again.  Defendant Yalkut sat

throughout this hearing but did not participate. Defendant Byrnes suspended Plaintiff for ten days without pay from January 5, 2000 to January 18, 2000.

On January19, 2000, Plaintiff began an extended leave due to complications in her pregnancy and did not return to work until April 19, 2000. On April 19, 2000, Defendant Byrnes presented Plaintiff with a Notice of Intent to Terminate. Two days later Defendant Byrnes held a *Loudermill* hearing. Defendant Byrnes terminated Plaintiff on that day.

## I.  Standard of Review

This Court will grant summary judgment when there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The movant carries the burden of establishing there are no genuine issues of material fact, *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970), but may discharge its burden by showing there is an absence of evidence to support the non-movant's case, *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant meets its burden, the burden shifts to the non-movant to demonstrate a genuine issue for trial on a material matter. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991).

In making its summary judgment determination, the court looks at the pleadings and documentary evidence in the light most favorable to the non-movant, *Deepwater Invs., v. Jackson Hole Ski Corp.* 938 F.2d 1105, 1110 (10th Cir. 1991), and the movant must show beyond a reasonable doubt she is entitled to summary judgment, *Hicks v. City of Watonga, Okla.*, 942 F.2d 737, 743 (10th Cir. 1991). However, credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The evidence of the non-movant is

to be believed, and all justifiable inferences are to be drawn in her favor. *Id.* Once the burden shifts to the non-movant, that party may not rest on its pleadings but must set forth specific facts showing there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof. *Celotex Corp.*, 477 U.S. at 324. However, "the mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion." *Anderson*, 477 U.S. at 247-48. "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* If the non-movant cannot make such a showing, after adequate time for discovery, summary judgment is mandated. *Id.* at 322. The Court will consider Defendants' motion for partial summary judgment in light of these standards.

### III.  Discussion

**A.  1985(2) Claim**

Section 1985 does not in itself create any substantive rights; it grants an avenue of relief to a plaintiff who has been deprived of an existing constitutional or federal statutory right. *Gallegos v. City and County of Denver*, 984 F.2d 358, 362 (10th Cir. 1993). In Count II of her Complaint, Plaintiff asserts a claim against Defendants for conspiracy to retaliate against her for having given affidavit testimony against Defendant Yalkut. To succeed on this claim, Plaintiff must allege a conspiracy, a nexus between the conspiracy and her affidavit testimony, and injury on account of having testified. *Brever v. Rockwell International Corp.*, 40 F.3d 1119, 1129 (10th Cir. 1994).

Defendants contend Plaintiff cannot prevail on her claim because Plaintiff has no personal knowledge that Defendants Byrnes and Yalkut conspired against her prior to her January suspension and because Plaintiff has no witnesses who will claim Defendant Byrnes conferred with Defendant Yalkut prior to suspending her. Additionally, Defendants claim Plaintiff has no

7

personal knowledge that Defendants Byrnes and Yalkut conspired against her prior to her April termination. Defendants assert Plaintiff has no witnesses, facts, documents or exhibits to support her claim that Defendant Yalkut told Defendant Byrnes that he thought Plaintiff should be terminated. Therefore, Defendants contend Plaintiff cannot demonstrate a conspiracy.

A Plaintiff may establish, either by direct or circumstantial evidence, a meeting of the minds. *Abercrombie v. City of Catoosa, Oklahoma*, 896 F.2d 1228, 1230 (10th Cir. 1990). In this case, Plaintiff has alleged a sequence of events sufficient to permit an inference of a "meeting of the minds" of Defendants. Plaintiff had been employed with the City of Las Cruces Municipal Court for almost ten years and had worked with six judges before Defendant Byrnes. Plaintiff had never been warned or reprimanded for her work during that time and had received letters of recommendation and appreciation from some of the judges. During a dispute between the former presiding judge and Defendant Yalkut, Plaintiff provided affidavit testimony in support of the former presiding judge and against Defendant Yalkut. Defendant Yalkut could not retaliate against Plaintiff because the State District Court issued a Writ of Superintending Control directing compliance with applicable personnel rules and regulations. However, shortly after Defendant Byrnes became the presiding judge, Defendant Byrnes presented Plaintiff with a memorandum, expressing her dissatisfaction with Plaintiff's job performance. That memorandum included allegations by Defendant Yalkut that Plaintiff had removed Westlaw from his computer and had countermanded his orders. Prior to this memorandum, Defendant Byrnes contends she verbally warned Plaintiff about treating Defendant Yalkut with respect. Thus, Defendants Yalkut and Byrnes had discussed Plaintiff prior to the December 21, 1999 memorandum. Defendant Byrnes had less than thirty working days to observe Plaintiff's performance, five of which Defendant

8

Byrnes had not even assumed her position and ten of which Plaintiff was away at training. By January 4, 2000, when Plaintiff returned to work after her illness, Defendant Byrnes had already disabled her computer. Plaintiff did not return to work until April 19, 2000, when Defendant Byrnes served her with her Notice of Termination. Two days later Defendant Byrnes fired her.

Based on this sequence of events, the Court finds that there are genuine issues of material fact concerning the existence of a conspiracy which precludes the granting of summary judgment.

## B.  Qualified Immunity

Defendants Byrnes and Yalkut have raised the affirmative defense of qualified immunity which protects governmental officials from damages in civil rights actions.  "[A] defendant who asserts the defense of qualified immunity and establishes that his or her actions were objectively reasonable cannot be held liable for an alleged conspiracy based on those acts." *Redpath v. City of Overland Park*, 857 F.Supp. 1448, 1465 (D.Kan. 1994).  Moreover, to withstand the defense of qualified immunity in a summary judgment motion, "plaintiff must produce facts 'sufficient to show both that the defendant's alleged conduct violated the law and that the law was clearly established when the alleged violation occurred.'" *Bruning v.* Pixler, 949 F.2d 352, 356 (10th Cir. 1991)(quoting *Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 646 (10th Cir. 1988)).

In determining whether the right was clearly established,  "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  The action alleged to have violated a right does not have to have previously been held unlawful, however, "in light of pre-existing law the unlawfulness must be apparent." *Id.* "Ordinarily, in order for the law to be clearly established,

9

there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992).

If the plaintiff fails to carry either part of his two-part burden, the Court must grant the defendant qualified immunity. *Albright*, 51 F.3d at 1535. "Only if the plaintiff succeeds in carrying his two-part burden, does the burden shift to the defendant. At that point, the defendant must show 'that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law.'" *Id.* (quoting *Hinton v. City of Elwood*, 997 F.2d 774, 779 (10th Cir. 1993)).

In this case, Plaintiff has alleged sufficient facts to carry her burden. At the time of her termination, the law underlying Plaintiff's § 1985 claim was clear. Accordingly, Defendants Byrnes and Yalkut are not entitled to qualified immunity.

## C.  Retaliatory Discharge Claim

Plaintiff asserts a state claim for retaliatory discharge in Count III of her Complaint. Count III of Plaintiff's Complaint alleges that "[t]estimony in a court of law is protected activity, and as such public policy encourages such activity." Pl.'s Compl. ¶ 59. Defendants Byrnes and Yalkut "first suspended, then fired Plaintiff in whole or in part because she testified against Yalkut, which acts constitute retaliatory discharge." *Id.* at ¶ 60. Defendants contend Plaintiff's retaliatory discharge claim fails for the following reasons: (1) Plaintiff cannot establish a causal connection between her alleged protected activity and the adverse employment action; and (2) Plaintiff's retaliatory discharge claim is not listed as one of the specifically enumerated torts contained in the New Mexico Tort Claims Act and thus sovereign immunity precludes this cause of action.

A retaliatory discharge cause of action was first recognized in New Mexico in *Vigil v. Arzola*, 102 N.M. 682, 686-90 (1983), *rev'd on other grounds*, 101 N.M. 687 (1984).  Prior to *Vigil*, the longstanding rule was that an employee who did not have a contract of employment for a definite term could be discharged at will, with or without cause.  The tort of retaliatory discharge allows a discharged at-will employee to recover in tort when his or her discharge contravenes a clear mandate of public policy.  *Chavez v. Manville Products Corp.*, 108 N.M. 643, 647 (1989).  However, a retaliatory discharge cause of action is a narrow exception to the terminable at-will rule and has only been applied to employment at-will situations.  *Silva v. Albuquerque Assembly & Distribution Freeport Warehouse Corp.*, 106 N.M. 19, 20 (1987).  The express reason for recognizing the tort of retaliatory discharge was to protect employees not protected from wrongful discharge by an employment contract.  *Id.*  Accordingly, cases addressing this issue have found that a plaintiff who is not an at-will employee is not allowed to pursue an action for the tort of retaliatory discharge under the public policy exception.  *See e.g.*, *Salazar v. Furr's* Inc., 629 F.Supp.1403 (D.N.M. 1986)(if employee has protection either because of employment contract or through another cause of action, the tort of retaliatory discharge is unnecessary and will not be recognized); *Vasquez v. Mason & Hanger-Silas Mason Co.*, 1985 WL 5964 (1985)(where employee is working under a union contract, retaliatory discharge not available because protection against wrongful discharge is already enjoyed by such employee).  Significantly, in *Silva v. American Federation of State, County and Municipal Employees*, 131 N.M. 364 (2001), the Supreme Court of New Mexico removed any doubt as to this issue.  In response to a question certified by the United States Court of Appeals for the Tenth Circuit regarding whether a plaintiff who is not an at-will employee could pursue an action for the

11

tort of retaliatory discharge, the New Mexico Supreme Court responded in the negative. The Court of Appeals certified this question because in the case of *Gandy v. Wal-Mart Stores, Inc.*, 117 N.M. 441 (1994), the Court left the impression that its holding in *Gandy* expanded a retaliatory discharge action beyond the principles announced in *Vigil* and *Silva*.

In *Gandy*, the Court addressed the question of whether an at-will employee's right to bring a retaliatory discharge action should be limited by the existence of a statutory remedy. *Id.* at 444. In *Gandy*, the Court concluded "that the tort of retaliatory discharge, as an exception to the at-will doctrine, was not preempted by the legislative recognition of another exception to that doctrine in the Human Rights Act." *American Federation of State, County and Municipal Employees*, 131 N.M. at 367. The Court found that "the presence of the Human Rights Act remedy does not convert an otherwise at-will employee to one terminable only for just cause, and the need for the tort of retaliatory discharge is still present." *Id.* In this case, Plaintiff was not an at-will employee and has protection through another cause of action for wrongful discharge, thus she cannot avail herself of this tort. Therefore, Defendants' Motion for Partial Summary Judgment as to Count III of Plaintiff's Complaint will be granted and this cause of action dismissed. A partial judgment shall be entered in accordance with this Memorandum Opinion.

### D.  Intentional Infliction of Emotional Distress

The tort of intentional infliction of emotional distress in New Mexico requires that the conduct which causes the emotional distress be extreme and outrageous and that the emotional distress be severe. *Dominguez v. Stone*, 97 N.M. 211, 214-15 (Ct.App. 1981). A plaintiff alleging this tort is not required to show that he or she suffered bodily harm in order to recover

for intentionally inflicted emotional distress, although he or she may recover for such harm if it results from such conduct. *Id.*

Initially, the Court determines as a matter of law whether conduct reasonably may by regarded as so extreme and outrageous that it will permit recovery under the tort of intentional infliction of emotional distress. *Padwa v. Hadley*, 127 N.M. 416, 419 (Ct.App. 1999). "When reasonable persons may differ on that question, it is for the jury to decide, subject to the oversight of the court." *Id.*

Plaintiff claims, *inter alia*, that Defendant Byrnes belittled her in front of other employees, spoke to her in a rude, sarcastic manner, screamed at her in front of employees, attorneys and police officers, told her to shut up on more than one occasion, struck her with a pen she angrily threw at Plaintiff, threw her suspension papers at her, slammed the door in her face and had Defendant Yalkut sit at the January 4, 2000 *Loudermill* hearing for the only purpose of laughing at her. Lucero Aff. pgs. 153-168. Plaintiff contends that she had dealt with angry people in the past but Defendant Byrnes was "different." According to Plaintiff,

> She – to me, it felt like she purposely – wanted to see me cry, she – and it seemed like the more that I didn't, the angrier she became. And, I mean, I'm 33 years old, and I've never had anyone stand over me, literally tower over me and put their finger in my face and tell me to shut my mouth. And then to have Judge Yalkut just sitting there laughing, it was just the most humiliating, horrible experience. I was in my last month of pregnancy, and I was already stressed because of my pregnancy.
>
> \* \* \* \* \* \* \*
>
> [B]ut just the way she spoke to me, her demeanor, the way she towered over me and her tone. And not only that, but I know that Judge Miller-Byrnes has had previous situations where her temper is well known. At one occasion it came out in the Sun-News where she had punched out some girl for taking her parking

13

>space.  And so I know of her temper, and I really thought that she was capable of hitting me.

Lucero Dep., pgs. 160-61.  The Court notes that, during Plaintiff's April 21, 2000 pretermination hearing, Plaintiff was explaining to Defendant Byrnes that she could not load JSI software as Defendant Byrnes had directed because without a password she could not even get into her computer.  The transcript of that hearing reflects that Defendant Byrnes is "chuckling."

Plaintiff claims that after the January 4, 2000 *Lourdermill* hearing, she "did get sick when I left from there, because I was so stressed out that I just– left throwing up, and I left sick.  I was very sick." *Id.* at pg. 168.  Plaintiff claims she has problems sleeping, suffers from anxiety and panic attacks and feels "it just altered my whole life." *Id.* at pg. 172.

Although "a free and democratic society must tolerate certain offensive conduct as well as some obnoxious or morally deviant behavior," *Padwa*, 127 N.M. at 420, Defendants' behavior is more than offensive or obnoxious.  Assaulting and battering an employee is not conduct that one would expect or tolerate at the workplace, especially from an individual in Defendant Byrnes' position who is responsible for upholding the law.  Defendants' behavior was also undertaken with no concern for Plaintiff's health, and Defendants knew Plaintiff was in her last month of pregnancy.  A jury could find such conduct outrageous.  Accordingly, the Court will deny Defendants' motion for summary judgment as to this cause of action.

**NOW, THEREFORE,**

**IT IS HEREBY ORDERED** that Defendants' Motion for Partial Summary Judgment is granted as to Plaintiff's retaliatory discharge claim in Count III of her Complaint.

**IT IS FURTHER ORDERED** that Defendants' Motion for Partial Summary Judgment is denied as to Plaintiff's civil conspiracy claim pursuant to 42 U.S.C. § 1985(2) in Count II of her Complaint and also denied as to Plaintiff's Intentional Infliction of Emotional Distress in Count IV of her Complaint.

_____
**JOE H. GALVAN**
**UNITED STATES DISTRICT JUDGE**